IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THOMAS FISH, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-00025-CV-W-DW |
| | ) |
| WILLIAM JEWEL | ) |
| COLLEGE, et al., | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 41). For the following reasons, Defendants' Motion is GRANTED IN PART.

I.  Factual Background

In May 2001, Plaintiff Thomas Fish ("Fish") signed a written agreement with William Jewell College ("College" or "William Jewell") under which Fish became a non-tenured, full-time Professor of Business at the College for the 2001-2002 academic year. In May 2002, a second written agreement was signed, under which Fish became a full-time, tenure-track professor of Business Administration at the College for the 2002-2003 year. Dr. Fish taught full-time at William Jewell College during the fall semester of 2002 and the early spring of 2003.

In mid-January 2003, Maria Levit, a representative of DeVry University contacted William Jewell's human resources department and spoke with Karen Brink of William Jewell. Ms. Levit gave Ms. Brink Dr. Fish's Social Security number and inquired whether Dr. Fish was working full time at William Jewell. Ms. Brink responded in the affirmative. Ms. Levit asked whether Ms. Brink

1

was aware that Dr. Fish was on disability from DeVry University. Ms. Brink stated that she was not. Ms. Levit then allegedly stated that Dr. Fish committed insurance fraud by earlier misrepresenting his medical condition to DeVry and claiming to be disabled to obtain disability insurance benefits while working at William Jewell. On that same day, DeVry terminated Dr. Fish and issued him a letter explaining the reasons for his termination.

From late 2001 to 2003, William Jewell College suffered reductions in funding. Accordingly, the College took measures to reduce its staff and related payroll expenses. On or about January 22, 2003, John Westlie, then Interim Dean of the College, informed Dr. Fish, via letter, that his contract to teach at the College would not be renewed for the 2003-2004 academic year due to financial reasons. In a subsequent departmental meeting at Jewell, Professor Whittaker of William Jewell stated that Dr. Fish was terminated for "personal reasons." The faculty inquired into the specifics, but Professor Whittaker did not provide additional details.

In early April 2003, Dr. Fish requested and filled out an application for long-term disability benefits through Canada Life, William Jewell's long term disability carrier. Some time thereafter, Karen Brink of William Jewell submitted Dr. Fish's claim to Canada Life. Canada Life subsequently denied Dr. Fish's claim for long-term disability benefits and invited Dr. Fish to file another claim seeking benefits for a period during which he was not working and receiving full salary.

Dr. Fish continued to teach at the College through the remainder of the 2003 summer program. During this time, Dr. Fish inquired about taking medical leave for the rest of his contract, through the summer courses. When informed that he may not be compensated for this type of leave, he taught the classes through the end of the summer program.

In late September 2003, Dr. Fish requested a service letter from William Jewell. This letter

was provided to Dr. Fish in early October. The letter stated that Dr. Fish's position was eliminated for financial reasons as part of a campus-wide reorganization that began in November 2001 and resulted in non-renewal of some non-tenured faculty positions. Dr. Fish has not shared this letter with anyone other than his wife, and has not applied for employment with any potential employer since October 2003. Dr. Fish contests that the reason for his termination listed in the service letter is not the true reason for his termination.

Dr. Fish and his wife, Patricia Fish, filed this suit against William Jewell College; Karen Brink, Human Resources Manager; David Sallee, President; Rom Dempsey, Vice President; and John Westlie, Provost. Plaintiffs allege (1) Violation of Service Letter Statute (Count I); (2) Defamation (Count II); (3) Tortious Interference with Canada Life (Count III); (4) Tortious Interference with DeVry (Unnumbered Count)[1]; (5) ERISA violations (Count IV); (6) Negligence (Count V); (7) Invasion of Privacy (Count VI); (8) Vexatious Refusal to Pay (Count VII); (9) Breach of Fiduciary Duty (Count VIII); and (10) Prejudgment Interest (Count IX).

For the forgoing reasons, Count I, the Unnumbered Count, Count VI, Count VII and Count VIII are hereby DISMISSED.

II.   Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Issues of fact must be material to a resolution of the

---

[1]Plaintiff's Complaint does not include a heading for this count and Defendants refer to it as an "unnumbered count." The Court adopts this language.

dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgement is appropriate. Case v. ADT Automotive, 17 F. Supp. 2d 1077 (W.D. Mo. 1997) (citing Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)).

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 252-255 (1986); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727 - 28 (8th Cir.), cert. denied, 444 U.S. 991 (1979).

    A.    ERISA Preemption

Defendants argue that the majority of Plaintiffs' claims relate to an ERISA-governed employee benefit plan and are therefore preempted by ERISA. ERISA was enacted with the purpose of creating a uniform national system of regulation for employee-sponsored benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44-45 (1987). To that end, the ERISA statute provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In Pilot Life, the Supreme Court noted that the phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan." Id. at 47 (quoting Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 739 (1985).

Defendants argue that Count III, tortious interference with Canada Life;, the Unnumbered Count, tortious interference with DeVry; Count V, negligence; Count VII, vexatious refusal to pay insurance benefits; and Count VIII, breach of fiduciary duty are all preempted because of their clear relation to, and attempt to regulate, the claims process and determination of benefits under an ERISA

4

governed plan.

Plaintiffs' claims of tortious interference with Canada Life, tortious interference with DeVry, and negligence are state common-law claims of general application that function irrespective of the existence of an ERISA plan. They are neither "connected to" or "refer to" the ERISA statute or an ERISA plan. The existence of an ERISA plan is not essential to the operation of these claims and do not impose requirements by reference to ERISA covered programs. Nor does the Court believe that Congress intended ERISA to regulate the alleged actions in this case, where the state law claims are of general application. Accordingly, the Court finds that they are not preempted by ERISA. California Div. of Labor Standards Enforcement v. Dillingham Constr. Inc., 519 U.S. 316, 325 (1997); Wilson v. Zoellner, 114 F.3d 713, 717 (8th Cir. 1997).

Next, Defendants argue that Plaintiffs' claim of vexatious refusal to pay insurance benefits seeking relief pursuant to § 375.296 R.S.Mo. and § 375.420 R.S.Mo. (Count VII) is preempted by ERISA. Sections 375.296 and 375.420 provide a remedy and penalty for any bad faith refusal to pay out of the plan. A vexatious refusal to pay claim is barred by ERISA to the extent it refers to benefits provided by an employee benefit plan. Hoeflicker v. Cent. States, Southeast and Southwest Areas Health and Welfare Fund, 644 F. Supp. 195 (W.D. Mo. 1986). Accordingly, Count VII falls under the preemption provision and is hereby dismissed. See In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir. 1998); Vickery v. United Med. Res., Inc., 43 F.3d 1208, 1209 (8th Cir. 1994).

Next, Defendants argue that Plaintiffs' breach of fiduciary duty claim (Count VIII) is preempted by ERISA. Plaintiffs' Breach of Fiduciary Duty claim identifies only one fiduciary duty allegedly owed to Plaintiff, and that is the one arising under ERISA. Accordingly, Count VIII is preempted by ERISA and is dismissed.

B.  Count I: Service Letter

Count I alleges that the College failed to comply with Mo. Rev. Stat. § 290.140, Missouri's service letter statute. While Defendants argue that the College's service letter was provided in a timely fashion and contained full and accurate information, Plaintiff alleges the reasons proffered in the letter were pretextual. While the Court, examining the evidence in the light most favorable to Plaintiff, finds that genuine issues of material fact exist on this matter, Plaintiffs' claim fails because they fail to present any evidence of damages.

The statute clearly precludes recovery of punitive damages where a defendant has provided a service letter setting forth responses to the statutorily required information. See Mo. Rev. Stat. § 290.140.2 ("no award of punitive damages under this section shall be based upon the content of any such letter"); See also Ruzicka v. Hart Printing Co., 21 S.W.3d 67, 76 (Mo. Ct. App. 2000). Second, Plaintiffs point to no evidence shown that they have been harmed in any way by the service letter such that compensatory damages are warranted. Dr. Fish admitted that he has not shown his service letter to any potential employer and has not sought any employment that he has been denied since receiving the letter. Id. at 75-76.

C.  Unnumbered Count: Tortious interference with DeVry

Regarding the claim of tortious interference with DeVry, Plaintiffs argue that Ms. Brink's conversation with Ms. Levit of DeVry resulted in the termination of Dr. Fish from DeVry. Plaintiffs have failed to show that any conduct on the part of Defendants induced or caused any conduct by DeVry. It is undisputed that Ms. Levit of DeVry initiated the phone call to Ms. Brink at William Jewell College "to determine if Plaintiff was working at Jewell while under claim or disability leave from DeVry." The evidence presented by Plaintiffs shows that Ms. Levitt of DeVry stated to Ms.

6

Brink of Jewell that Plaintiff had misrepresented his medical condition to DeVry. Plaintiffs have failed to show anything more than that Ms. Brink informed Ms. Levit of the status of Dr. Fish's employment at William Jewell. Plaintiffs present no evidence of Ms. Brink's or William Jewell's intent, let alone harmful intent directed at Dr. Fish. Accordingly, Plaintiffs' claim of tortious interference with DeVry must fail as a matter of law.

### D. Count VI: Invasion of Privacy

To prevail on a claim for public disclosure of private facts, Plaintiffs must show: (1) publication or publicity; (2) absence of any waiver or privilege; (3) of private matters; (4) so as to bring about shame and humiliation to a person of ordinary sensibilities. Balke v. Ream, 33 S.W.3d 589, 594 (Mo. Ct. App. 2000). "Publication" must be more than mere disclosure - there must be a public disclosure, i.e., communications that are available to the general public or have the likelihood of becoming public knowledge. Id.

Plaintiffs allege that Defendants invaded Plaintiffs' privacy by releasing Dr. Fish's employment status and health information to DeVry and to Shook Hardy & Bacon, Defendants' counsel. First, Plaintiffs show only that Ms. Brink answered a phone call and confirmed Dr. Fish's employment. They fail to identify any truly confidential information that was shared during the telephone call between Ms. Levit or DeVry and Ms. Brink of William Jewell College. Plaintiffs' Complaint states that Defendants unlawfully released Plaintiffs' employment records without proper Health Insurance Portability and Accountability Act (HIPPA) authorization, but fail to present evidence or authority requiring William Jewell to obtain authorization from Dr. Fish before confirming that he was teaching classes at the college during the time in question. In opposition to summary judgment on this claim, Plaintiffs argue that a "reasonable inference" may be drawn that

7

Dr. Fish's "health" and "employment activity" were published to DeVry during the "secret phone call" between Ms. Levit and Ms. Brink, because he was subsequently terminated from DeVry. Plaintiffs submit absolutely no evidence in support of this claim and the court refuses to accept such conjecture to overcome a motion for summary judgment.

Second, any discussion between the Defendants and their attorneys is subject to the attorney-client privilege. Plaintiffs fail to present any evidence of waiver of attorney-client privilege regarding discussions between the College and their counsel. Nor do Plaintiffs present any evidence that Shook Hardy & Bacon disclosed or disseminated the alleged information discussed with their client. Accordingly, Plaintiffs' Invasion of Privacy claim must fail.

  E. <u>Remaining Counts</u>

As stated above, Federal Rule of Civil Procedure 56(c) states that summary judgment shall be granted only if the movant can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The Court, examining the evidence in the light most favorable to Plaintiff, finds that the moving party has failed to meet its burden regarding Plaintiffs' Counts II (Defamation), III (Tortious interference with Canada Life), IV (ERISA), V (Negligence) and Count IX (Prejudgment Interest). As a result, Defendants' Motion for Summary Judgment is denied in part; the case shall proceed to trial on the aforementioned counts. This is not to say that the Court accepts Plaintiffs' allegations and positions as well grounded in truth or logic. Rather, this decision is based on the high burden Defendants must carry in showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

III. <u>Administrative Appeal of Long Term Disability ERISA Benefits Claim</u>

  On January 23, 2006, Plaintiffs moved for an extension of time to respond to Defendants'

8

Motion for Summary Judgment and to Stay Proceedings Pending Mandatory Administrative Appeal or Alternately to Dismiss Without Prejudice. (Doc. 43). In that motion, Plaintiffs argued that this case should be stayed pending a courtesy, third-level review of Dr. Fish's long-term disability claim by Jefferson Pilot (successor to Canada Life). In the alternative, Plaintiffs requested that the Court extend the deadline to file their response to Defendants' Motion for Summary Judgment until 60 days past Jefferson Pilot's final determination of the claim and then reopen discovery as to the matters represented by the Defendants in support of their Motion for Summary Judgment. After noting Plaintiffs' already needless delay of the proceedings, the Court denied the motion on the grounds that Plaintiffs had affirmatively plead that appeals with Canada Life had been exhausted and that Plaintiffs would likely not be implicated in the Jefferson Pilot proceeding.

After having opposed Plaintiffs' Motion to Stay Proceedings, Defendants now argue that Plaintiffs' ERISA claims are "nothing more than a thinly-veiled claim for denial of benefits." As such, Defendants argue, Plaintiffs have not met the requisite exhaustion requirements under ERISA and the ERISA claims should be dismissed. In turn, Plaintiffs again ask the Court to dismiss the case without prejudice or to stay the case pending a courtesy, third-level review of Dr. Fish's long-term disability claim by non-party Jefferson Pilot (successor to Canada Life).

On July 31, 2006, Plaintiffs submitted a "Notice of Pendency of Administrative Review." (Doc. 57). This notice states that "Dr. Fish's William Jewell College long term disability ERISA benefits claim remains active and pending under administrative appeal with the Canada Life Assurance Company through its successor Jefferson Pilot International" and that this fact may deprive the court of subject matter jurisdiction. Plaintiffs "wonder why the Defendants would remove an action to a federal court contending the Court of their selection lacks subject matter

9

jurisdiction." Plaintiffs removed this action to this Court based on the Court's original jurisdiction over ERISA and COBRA rights pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367. To the extent that Plaintiffs' Notice is a motion to remand, it is denied. See Doc. 48. Similarly, Defendants' request that the ERISA claims be dismissed for failure to satisfy the "exhaustion requirements set forth in ERISA and in the plan" is denied. Defendants have failed to present any evidence to the Court showing that the terms of the ERISA plan mandate exhaustion of claims before asserting those claims in federal court such that the Court can, at this juncture, find for Defendants as a matter of law.

IV.  Conclusion

For the forgoing reasons, Defendant's Motion is GRANTED IN PART. Count I, Unnumbered Count , Count VI, Count VII and Count VIII are hereby DISMISSED. Plaintiffs are ORDERED, within fifteen (15) days of the date of this Order to update the Court as to the status of the administrator's final determination of Dr. Fish's long term disability claim.

IT IS SO ORDERED

/s/ DEAN WHIPPLE
Dean Whipple
United States District Judge

DATE:   August 3, 2006